[Cite as *State v. Pullen*, 2012-Ohio-1858.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                          :

    Plaintiff-Appellee                         :          C.A. CASE NO.    24620

v.                                                             :          T.C. NO.    10CR1053

GARY L. PULLEN                                        :          (Criminal appeal from
                                        Common Pleas Court)

    Defendant-Appellant                      :


                                                               :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    27th    day of     April   , 2012.

. . . . . . . . . .

JOHNNA M. SHIA, Atty. Reg. No. 0067685, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JOYCE M. DEITERING, Atty. Reg. No. 0005776, 8801 N. Main Street, Suite 200, Dayton, Ohio 45415
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Defendant-appellant Gary Lee Pullen appeals his conviction and sentence for

one count of possession of crack cocaine (less than one gram), in violation of R.C. 2925.11(A), a felony of the fifth degree. Pullen filed a timely notice of appeal with this Court on April 26, 2011.

{¶ 2} The incident which forms the basis for the instant appeal occurred on March 25, 2010, when Dayton Police Detective Mitch Olmstead and Sergeant Michael McKune observed Pullen get into a purple Ford Taurus parked near the corner of Deeds and Leo Streets in Dayton, Ohio. The officers were familiar with Pullen because he had been involved in an incident the week before wherein he was found to be driving under suspension in the same vehicle. Before the officers could turn around to follow him, Pullen drove the Taurus away at a "rapid speed." The officers sent out a radio transmission notifying any nearby officers of Pullen's description and the direction in which he was traveling.

{¶ 3} Dayton Police Officer Scott Florea received the dispatch and observed Pullen's vehicle heading westbound on Leo Street. Officer Florea began following Pullen's vehicle. Officer Florea, who was also familiar with Pullen, initiated a traffic stop after observing Pullen commit a lane violation. Officer Florea approached the vehicle and asked Pullen for identification. Pullen provided Officer Florea with an Ohio Identification Card and a Sinclair Community College identification card. Officer Florea ordered Pullen to exit the vehicle. After performing a *Terry* pat down which failed to produce any weapons or contraband, Officer Florea placed Pullen in the back of his cruiser while he verified the information from the identification cards.

{¶ 4} Officer Florea discovered that Pullen's driving privileges remained

suspended and arrested him. Since Pullen was the only occupant of the vehicle and it was blocking an entire lane of traffic, Officer Florea decided to have the vehicle impounded pursuant to the Dayton Police Tow Policy ("DPTP"). The DPTP also provided for an inventory search of the vehicle prior to it being towed. Det. Olmstead and Officer Jennifer Godsey performed the search of the vehicle. As a result of the inventory search, Det. Olmstead discovered several small pieces of a white substance on the front passenger seat of the vehicle. Field testing established that the substance was crack cocaine, and Pullen was additionally charged with possession thereof.

{¶ 5} Officer Godsey testified that Pullen's mother, the owner of the vehicle, appeared at the scene after the officers had started inventorying its contents. Pullen's mother asked the officers if she could take her vehicle, but the officers finished the inventory search and had the vehicle towed.

{¶ 6} Officer Godsey transported Pullen to jail for processing. While they were in the cruiser, Godsey testified that Pullen asked her where they found the crack. Officer Godsey told him that the crack was found on the front passenger seat. Pullen responded that they "didn't have to arrest him for that small amount," and "that [they] could have thrown it away – it's called discretion." Officer Godsey testified that she told Pullen that he should stop talking. Pullen then informed Officer Godsey that he was not a dealer, rather he only uses drugs. Pullen also allegedly stated "it's not like I'm out here selling it."

{¶ 7} Pullen was subsequently indicted for one count of possession of crack cocaine on July 1, 2010. At his arraignment on July 8, 2010, Pullen stood mute, and the trial court entered a plea of not guilty on his behalf. Pullen filed a motion to suppress on

July 27, 2010.  A hearing was held on August 19, 2010, and the trial court overruled Pullen's motion to suppress in an oral ruling from the bench, journalized thereafter on August 20, 2010.  After a jury trial, Pullen was found guilty of possession of crack cocaine, a felony of the fifth degree.  On April 13, 2011, the trial court sentenced Pullen to five years of community control sanctions.

{¶ 8}  It is from this judgment that Pullen now appeals.

{¶ 9}  Pullen's first assignment of error is as follows:

{¶ 10}  "THE TRIAL COURT ERRED WHEN DENYING THE DEFENDANT-APPELLANT'S PRE-TRIAL MOTION TO SUPPRESS FINDING THE INVENTORY SEARCH AND TOW WERE VALID."

{¶ 11}  In his first assignment, Pullen contends that the trial court erred when it overruled his motion to suppress.  Specifically, Pullen argues that the inventory search was not valid because the vehicle was not lawfully impounded.  In the alternative, Pullen asserts that if the vehicle was lawfully impounded, the police improperly searched the vehicle for investigatory purposes, rather than to simply inventory the contents of the vehicle.

{¶ 12}  In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 679 N.E.2d 321 (2d Dist.1996),  quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994).  The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d

Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.

{¶ 13} It is well settled that the "inventory exception" to the warrant requirement of the Fourth Amendment permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle. See *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *State v Mesa*, 87 Ohio St.3d 105, 108-109, 717 N.E.2d 329, 332-333 (1999). The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function. *Opperman*, supra, 428 U.S. at 370.

{¶ 14} Such an inventory search is deemed to be constitutionally permissible in the absence of a warrant because it reasonably serves to protect the owner's property while it is in police custody, to protect police against claims concerning lost or stolen property, and to protect police and the public against potential hazards posed by impounded property. *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed2d 1 (1990).

{¶ 15} "To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *State v. Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580; citing *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992). We note that the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that policy. *State v.*

*Wilcoxson*, 2d Dist. Montgomery No. 15928, 1997 WL 452011 (July 25, 1997).

**{¶ 16}** In the instant case, Officer Florea testified that he initially arrested Pullen for driving without a valid license. When Pullen was arrested he was the only occupant of the vehicle which was blocking traffic on Keowee Street. Officer Florea testified that he based his decision to impound the vehicle on the Dayton Police Tow Policy which states in pertinent part:

**{¶ 17}** I. WHEN TO TOW A VEHICLE

A. Driver/Owner Arrested

RCGO 76.08 describes circumstances, which allow a vehicle to be impounded due to an arrest. It states, in part, Members of the Police Department are authorized to remove or direct the removal of a vehicle under any of the following circumstances...(C) Arrest and Detention of Driver. Whenever the driver or person in charge of any vehicle is placed under arrest and taken into custody and detained by police under circumstances which leaves or will leave a vehicle unattended.

***

C. *** [T]o remove the vehicle from obstructing traffic.

**{¶ 18}** Pullen does not dispute that his vehicle was obstructing traffic after Officer Florea arrested him for driving with a suspended license. Pullen, however, asserts that his mother, who was the owner of the vehicle, appeared at the scene and requested to take the car before Officer Florea directed Det. Olmstead and Officer Godsey to perform an inventory

search of the vehicle prior to its impoundment. Pullen argues that "any threat to public safety and the efficient flow of traffic was obviated by Pullen's mother's presence at the scene prior to the tow taking place." Simply put, Pullen argues that had police allowed his mother to take the vehicle, it would have no longer been obstructing traffic, and there would have been no need to impound it. Pullen's assertion in this regard is undermined by the evidence adduced at the suppression hearing which clearly establishes that Pullen's mother did not appear at the scene until after the officers began the inventory search of the vehicle. This is highlighted during the redirect examination of Officer Godsey by the State:

> The State: Can you tell me at what point in this process the Defendant's mother arrived, do you recall?
>
> Officer Godsey: I remember we were inventorying the car, and she drove up [and] parked in that – in the parking lot there of the motel and approached again. I didn't know her. I think the officers were a little more familiar with her from prior dealings. But then that's when I started talking to her.
>
> Q: Okay. So you were already in the process of inventorying the car when she arrived on the scene?
>
> A: That's correct.
>
> Q: Did she ever ask you if she could take the vehicle?
>
> A: No.

{¶ 19} Additionally, when the trial court overruled Pullen's motion to suppress at the close of the hearing, it made the following findings of fact:

The Court: All right. At this time, the Court finds consistent with Mr. Bailey's concession that the officer had a reasonable articulable suspicion to stop the vehicle to investigate not only the improper turn but also the driving with no operator's license.

The Court finds that it's reasonable to have detained the Defendant at that point to place him in the officer's patrol car. And upon determining that in fact he did not have an operator's license, the decision to tow the vehicle was appropriate.

*The Court finds consistent with Ms. Godsey's testimony that the Defendant's mother did not arrive prior to the commencement of the inventory search and the decision to tow the vehicle.*[1] The cocaine was apparently in open view.

Therefore, the Court is going to overrule the motion to suppress.

{¶ 20} The record clearly establishes that Officer Florea possessed a valid basis upon which to order that the vehicle be towed because it was blocking an entire lane of

---

[1] We note that, pursuant to App. R. 9(E), the parties have agreed to stipulate to the fact that the printed transcript of the suppression hearing mistakenly omitted the word "not" on page 33, line 11, when the trial court was making its findings of fact. The transcription error was discovered upon review of the video transcript of the hearing by this Court. We further note that the omission of the word "not" dramatically changes the meaning of the trial court's pronouncement. Said stipulation was filed with this Court on March 26, 2012.

traffic on Keowee Street. Pursuant to the Dayton Police Tow Policy, Officer Florea directed Det. Olmstead and Officer Godsey to perform an inventory search of the vehicle prior to having it towed. By the time Pullen's mother arrived at the scene, the officers had already begun the inventory search of the vehicle and had no duty to turn the car over to her. During the search, Det. Olmstead discovered a small amount of crack cocaine in plain view on the front passenger seat of the vehicle. There was no evidence adduced at the hearing which established that the purpose of the officers' search was anything other than simply an attempt to inventory the car's contents before it was towed. Upon review, we conclude that the decision to tow and inventory search of the vehicle was proper under the circumstances, and Pullen's constitutional rights were not violated. Accordingly, the trial court did not err when it overruled Pullen's motion to suppress.

{¶ 21} Pullen's first assignment of error is overruled.

{¶ 22} Pullen's second assignment of error is as follows:

{¶ 23} "THE TRIAL COURT ERRED WHEN ADMITTING OFFICER GODSEY'S TESTIMONY AS UNPREJUDICAL."

{¶ 24} In his second assignment, Pullen argues that the trial court erred when it allowed the admission of Officer Godsey's testimony regarding the inculpatory statements made by Pullen while he was being transported to the jail. Specifically, Pullen asserts that the statement he made that he "doesn't sell drugs," he "only uses them," was not relevant to or probative of any material issue. Rather, Pullen argues that the statement was improperly admitted and used as inadmissible character evidence.

{¶ 25} With respect to the admission or exclusion of evidence, the trial court has

broad discretion and its decision in such matters will not be disturbed by a reviewing court absent an abuse of discretion that has caused material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶ 26}** Evid.R. 403(A) provides:

> "Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

**{¶ 27}** The requirements for criminal liability are (1) conduct that includes a voluntary act and (2) the requisite degree of culpability specified by the statute defining the offense. R.C. 2901.21(A)(1) and (2). Pullen was found guilty of violating R.C. 2925.11(A) which states: "no person shall knowingly obtain, possess or use a controlled substance."

**{¶ 28}** "Knowingly" is defined in R.C. 2901.22(B):

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

**{¶ 29}** "Possession" includes both actual and constructive possession and is defined

in R.C. 2925.01(K):

> "Possess" or "possession" means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

**{¶ 30}** The State was obligated to prove that Pullen knowingly possessed the crack cocaine found in plain view on the front passenger seat of the vehicle. Pullen's statement to Officer Godsey that he "doesn't sell drugs, he only uses them" was directly relevant and probative of the issue regarding whether he was aware that the crack was in the vehicle. Of course, the trial court must exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Evid.R. 403(A). Such is not the case here. Merely because the statement was detrimental to Pullen's defense does not bar its admission at trial to prove beyond a reasonable doubt that he knowingly possessed the crack prior to its discovery during the inventory search. Moreover, we reject Pullen's assertion that the statement amounted to inadmissible character evidence. Pullen's statement supported the State's assertion that he knowingly possessed the crack cocaine, and the probative value of this evidence was not outweighed by the dangers of unfair prejudice. Thus, the trial court did not abuse its discretion when it allowed the admission of Pullen's statement into evidence.

**{¶ 31}** Pullen's second assignment of error is overruled.

**{¶ 32}** Pullen's third and final assignment of error is as follows:

**{¶ 33}** "THE CONVICTION IS IN ERROR BECAUSE INSUFFICIENT

EVIDENCE WAS INTRODUCED AT TRIAL TO DEMONSTRATE THAT PULLEN KNOWINGLY POSSESSED THE CRACK COCAINE."

{¶ 34}   In his final assignment, Pullen contends that the evidence adduced at trial was insufficient to sustain his conviction for possession of crack cocaine.

{¶ 35}   A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law.  *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.   The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991):

> An appellate court's function when reviewing the sufficiency
>
> of the evidence to support a criminal conviction is to examine
>
> the evidence admitted at trial to determine whether such
>
> evidence, if believed, would convince the average mind of the
>
> defendant's guilt beyond a reasonable doubt.   The relevant
>
> inquiry is whether, after viewing the evidence in a light most
>
> favorable to the prosecution, any rational trier of fact could
>
> have found the essential elements of the crime proven beyond
>
> a reasonable doubt.

{¶ 36}   Pullen was charged in count one with violating R.C. 2925.11(A), which required the State to prove that Defendant knowingly possessed crack cocaine.   Possession of a drug may be either actual physical possession or constructive possession. *State v. Butler*,

42 Ohio St.3d 174, 538 N.E.2d 98 (1989). A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982).

{¶ 37} Readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence sufficient to support a conclusion that he constructively possessed those drugs. *State v. Miller*, 2d Dist. Montgomery No. 19174, 2002-Ohio-4197. In determining whether a defendant knowingly possessed a controlled substance, it is necessary to examine the totality of the facts and circumstances surrounding its discovery. *State v. Teamer*, 82 Ohio St.3d 490, 492, 1998-Ohio-193, 696 N.E.2d 1049, *State v. Pounds*, 2d Dist. Montgomery No. 21257, 2006-Ohio-3040.

{¶ 38} The relevant and probative evidence adduced by the State included Pullen's inculpatory statements to Officer Godsey as well as the presence of the crack cocaine found on the front passenger seat in the vehicle from which Pullen was removed. When viewed in light most favorable to the prosecution, this combination of direct and circumstantial evidence clearly permits a rational trier of fact to find beyond a reasonable doubt that Pullen knowingly possessed the crack cocaine found in the vehicle, and therefore, sustain his conviction for violating R.C. 2925.11(A).

{¶ 39} Pullen's third and final assignment of error is overruled.

{¶ 40} All of Pullen's assignments of having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J., concurs.

GRADY, P.J., concurring:

{¶ 41} Routine police inventories of lawfully impounded vehicles are justified to protect the owner's property, to protect police against claims of lost or stolen property, and to protect the police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). "Implicit in Chief Justice Burger's approach to inventories (in *Opperman*) was the rationale that the impounding of the illegally parked vehicle was lawful because the owner was not present to make other arrangements for the automobile." Katz, Ohio Arrest, Search and Seizure (2008 Ed.), Section 13:09.

{¶ 42} After officers had called for a tow truck and commenced their inventory search of Defendant's vehicle, his mother appeared at the scene. Officer Florea testified at the hearing on Defendant's motion to suppress that he was aware that Defendant's mother was the registered owner of the vehicle. (Tr. 19.) When asked whether that fact avoided the need to tow the vehicle, Officer Florea replied: "She arrived at the scene after my decision to tow the vehicle was already made and to arrest Gary." (Tr. 20.) Officer Godsey also testified that, otherwise, the vehicle "[p]robably could have" (Tr. 28) been released to Defendant's mother instead of being impounded.

{¶ 43} A routine inventory search of a lawfully impounded vehicle is reasonable when performed pursuant to a standardized policy, and "when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile." *State v. Robinson*, 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979). That prohibited pretext is at least suggested when the owner of the vehicle is

available to remove it from the scene and there is no reason to search the vehicle except for the fact it may be impounded because it is illegally parked or presents a hazard to traffic.

{¶ 44} In a circumstance of this kind, the fact that the driver of the vehicle has been arrested and/or impoundment procedures have begun do not avoid the preferred alternative of releasing the vehicle to a person on the scene who can make other arrangements for it. On the record before us, however, it is unclear when Defendant's mother actually appeared on the scene in relation to the officers' seizure of the crack cocaine that Defendant moved to suppress. If the seizure occurred before Defendant's mother arrived, there was no such preferred alternative to an impoundment and inventory search.

{¶ 45} On a Crim.R. 12(C)(3) motion to suppress evidence, it is the movant's burden to show that a search was illegal and that the evidence to be suppressed was the fruit of the illegal search. Therefore, the failure to show whether the crack cocaine was seized before his mother arrived is chargeable to Defendant, not the State. On this record, there was no basis to suppress the evidence officers seized.

. . . . . . . . . .

Copies mailed to:

Johnna M. Shia
Joyce M. Deitering
Hon. Dennis Adkins