**[Cite as *State v. Allen*, 2020-Ohio-947.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28450 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-4423 |
| | : | |
| DERRICK DUJON ALLEN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of March, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JAMIE J. RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 120 West Second Street, Suite 1717, Liberty Tower, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Defendant-appellant Derrick Dujon Allen appeals his conviction for one count of having a weapon while under disability (prior drug conviction), in violation of R.C. 2923.13(A)(3), a felony of the third degree. Allen filed a timely notice of appeal with this Court on June 26, 2019.

**{¶ 2}** The incident which formed the basis for Allen's conviction occurred around 12:00 a.m. on the night of November 19, 2018, when Dayton Police Officer Jeremy Campbell and his partner, Officer Corey Kocagle, were patrolling the area near Fourth and Fifth Street in Dayton, Ohio. The officers were travelling in a marked police cruiser and were wearing the uniform of the day. As Officer Campbell drove past Torrence Street, he observed a vehicle stopped in the middle of the road. An unidentified individual exited from the passenger side of the vehicle, and the driver then proceeded to turn onto Fourth Street. Officer Campbell began to follow the subject vehicle, and he observed that the he was unable to read the license plate because the light over the plate was too dim or inoperable.

**{¶ 3}** Officer Campbell activated his cruiser's lights and initiated a stop of the vehicle. Officer Campbell testified that he exited his cruiser and approached the driver's side of the vehicle. Officer Campbell asked the driver of the vehicle, later identified as Allen, for his driver's license. Allen handed Officer Campbell an Ohio identification card. When Officer Campbell asked him if he had a valid driver's license, Allen stated that he did not. Officer Campbell testified that he then removed Allen from the vehicle and placed him in the backseat of the cruiser without handcuffs.

**{¶ 4}** Upon verifying that Allen's license was suspended, Officer Campbell called for a tow truck to have the vehicle removed from the roadway. Pursuant to Dayton Police

Department policy, Officer Campbell began an inventory search of the vehicle prior to it being towed. Officer Campbell testified that he opened the driver's door of the vehicle and immediately observed a bag of suspected marijuana, two handgun magazines, and ammunition in an open compartment in the door. Upon further investigation, Officer Campbell discovered a loaded handgun under the driver's seat inside the vehicle. At that point, Officer Campbell arrested Allen and took him into custody.

{¶ 5} On January 8, 2019, Allen was indicted for one count of having a weapon while under disability, and one count of improper handling of a firearm in a motor vehicle. At his arraignment on January 22, 2019, Allen stood mute, and the trial court entered pleas of not guilty on his behalf.

{¶ 6} On January 29, 2019, Allen filed a motion to suppress any physical evidence seized and any statements made during his stop and arrest by Officer Campbell on November 19, 2018. On March 7, 2019, a hearing was held before the trial court on said motion. On March 19, 2019, the trial court overruled Allen's motion to suppress from the bench. The trial court issued a brief entry overruling Allen's motion to suppress on March 21, 2019.

{¶ 7} On May 28, 2019, Allen pled no contest to one count of having a weapon while under disability in exchange for dismissal of the remaining count of improper handling of a firearm in a motor vehicle. On June 26, 2019, the trial court sentenced Allen to five years of community control.

{¶ 8} It is from this judgment that Allen now appeals.

{¶ 9} Allen's first assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION

TO SUPPRESS IN ITS ENTIRETY BECAUSE THE DAYTON POLICE DEPARTMENT TOW POLICY IS UNREASONABLE, VAGUE, AND VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT.

{¶ 10} In his first assignment, Allen contends that the tow policy promulgated by the Dayton Police Department violated his Fourth Amendment rights. Thus, Allen argues that the evidence obtained from the vehicle he was driving during the inventory search performed by Officer Campbell was illegally obtained and should have been suppressed.

{¶ 11} In regard to a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 12} "It is well settled that the 'inventory exception' to the warrant requirement of the Fourth Amendment permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle." *State v. Pullen*, 2d Dist. Montgomery No. 24620, 2012-Ohio-1858, ¶ 13, citing *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) and *State v. Mesa*, 87 Ohio St.3d 105, 108-109,

717 N.E.2d 329 (1999). "The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function." *State v. Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580, ¶ 11, citing *Opperman* at 370. "[A]n inventory search is deemed to be constitutionally permissible in the absence of a warrant because it reasonably serves to protect the owner's property while it is in police custody, to protect police against claims concerning lost or stolen property, and to protect police and the public against potential hazards posed by the impounded property." *Id.* at ¶ 12, citing *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).

{¶ 13} "To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580, ¶ 13, citing *State v. Hathman*, 65 Ohio St.3d 403, 604 N .E.2d 743 (1992). We note that the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that policy. *State v. Wilcoxson*, 2d Dist. Montgomery No. 15928, 1997 WL 452011, *4 (July 25, 1997).

{¶ 14} " 'In order for police to perform a valid inventory search of an automobile, the vehicle must first be lawfully impounded.' " *State v. Jackson*, 2d Dist. Montgomery No. 25960, 2015-Ohio-3607, ¶ 14, quoting *State v. Clancy*, 2d Dist. Montgomery No. 18844, 2002 WL 628124, *3 (April 19, 2002). "An impoundment is lawful if it is conducted pursuant to standardized police procedures. * * * Standardized procedures for

impoundment are required to ensure that a subsequent inventory search is not 'a ruse for general rummaging in order to discover incriminating evidence.' " *Clancy* at *3, quoting *Wells* at 4. Accordingly, "a routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile." *State v. Robinson*, 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979), citing *Opperman* at 373.

{¶ 15} "A police officer's assertion that an inventory search was done pursuant to a police department policy is not sufficient, standing alone, to meet the State's burden of proving that a warrantless search was reasonable because it fits within the inventory search exception to the warrant requirement." *Myrick* at ¶ 13, citing *Wilcoxson* at *4. To establish a lawful inventory search based on standard police practice, " 'the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that policy.' " Id., quoting *Wilcoxson* at *4.

{¶ 16} In the instant case, Officer Campbell testified that he initially detained Allen for driving without a valid license. When Allen was detained and arrested, he was the only occupant of the vehicle, which was parked on Fourth Street. Officer Campbell testified that he based his decision to impound the vehicle on the Dayton Police Tow Policy which states in pertinent part:

*I. WHEN TO TOW A VEHICLE (* * *)*

A. <u>Driver/Owner Arrested</u>: Vehicles <u>operated</u> by drivers without an

operator's license, while under suspension, operating while under the influence or where the vehicle was used in the commission of a crime should preferably be towed from where they were stopped, including private property. (see also General Order 3.02-2 Section III.F.) If an officer elects not to tow the vehicle and leave it legally parked, a Tow-In/Liability Waiver (Form F-472) must be completed by the operator/registered owner of the vehicle.

1. If the driver is the registered owner or the registered owner is on the scene and gives permission to another properly licensed driver to drive their vehicle, the officer may release the vehicle rather than tow it.

2. If the vehicle is towed, officers should make reasonable efforts to assure that the driver and other occupants are dropped off at a safe location until legal transportation can be obtained.

3. RCGO [Dayton Revised Code of General Ordinances] 76.08 describes circumstances, which allow a vehicle to be impounded due to an arrest. It states, in part, "*Members of the Police Department are authorized to remove or direct the removal of a vehicle under any of the following circumstances... (C) Arrest and detention of driver. Whenever the driver or person in charge of any vehicle is placed under arrest and taken into custody and detained by police under circumstances which leaves or will leave a vehicle unattended.*"

(Boldface, underlining, and italics in original.) State's Exhibit 1.

{¶ 17} The tow policy further states as follows:

### IV. PROPERTY INVENTORY OF A TOWED MOTOR VEHICLE

A. Prior to towing any motor vehicle (excluding Abandoned Vehicles), conduct an inventory of the contents and note the information on the MDC screen or complete a Tow-In/Liability Waiver Card F-472. A property inventory is an administrative, caretaking function, which itemizes and secures property in a seized or impounded vehicle. The United States Supreme Court has ruled that an inventory of a lawfully seized motor vehicle conducted to safeguard property and not merely as a pretext to search without a warrant is reasonable and does not violate Fourth Amendment Rights against illegal searches.

B. Inventory of a Towed Vehicle – Arrest Situation

* * *

3. Seize contraband or criminal evidence discovered during an inventory.

* * *

5. Inventory the contents of closed containers (boxes, bags, and unlocked suitcases), prior to locking them in the trunk. * * *

*Id.*

{¶ 18} The aforementioned tow policy permits Dayton police officers to inventory and tow "[v]ehicles operated by driver's without an operator's license." It is undisputed that Officer Campbell verified that Allen's driver's license had been suspended prior to making the decision to have the vehicle towed and before he initiated the inventory search. The tow policy states a preference for towing vehicles operated by drivers who do not have an operator's license. *State v. Shipp*, 2d Dist. Montgomery No. 24933, 2012-

Ohio-6189, ¶ 29. Furthermore, the tow policy provides that an inventory of the vehicle's contents should be performed prior to the towing of the motor vehicle. *Id.*

{¶ 19} In his brief, Allen argues that because he was not listed as the registered owner of the vehicle, Officer Campbell had a duty to contact the owner of the vehicle before performing an inventory search and then having the vehicle towed. However, the tow policy does not grant the officers discretion to contact a registered owner who is not at the scene and then wait for the owner to arrive to take possession of the vehicle. A critical aspect of an inventory search in Ohio is that it must be conducted in accordance with an existing policy. Inventory searches may constitutionally extend to a search of closed containers "if there is in existence a standardized policy or practice specifically governing the opening of such containers." *Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph two of the syllabus; *State v. Reese*, 2d Dist. Champaign No. 2018-CA-10, 2019-Ohio-399, ¶ 14. The tow policy specifically states that "[i]f the driver is the registered owner or the registered owner is on the scene and gives permission to another properly licensed driver to drive their vehicle, the officer may release the vehicle rather than tow it." In the instant case, the registered owner of the vehicle was not present, and Officer Campbell had no duty to contact the owner to come to the scene and retrieve the vehicle.

{¶ 20} Allen also argues that the vehicle he was driving "only partially" fell under the category "of vehicles taken into custody" for purposes of community-caretaking, which "include those that have been in accidents, * * *, and those that cannot be lawfully driven." *Reese* at ¶ 9. Therefore, Allen argues that since the vehicle he was driving was not in an accident or disabled and could be legally driven away from the scene, it was improper

for Officer Campbell to have the vehicle towed and its contents inventoried. However, the two examples provided in *Reese* were clearly not meant to limit the categories of vehicles which could be taken into custody for "the purposes of community-caretaking." *Id.* Thus, Allen's reliance on *Reese* is misplaced.

{¶ 21} Allen also argues that Officer Campbell impermissibly extended the scope of the inventory search to a closed compartment where the officer located the marijuana, firearm magazines, and ammunition. However, Officer Campbell did not testify that he searched a closed container in order to find the aforementioned items. Rather, Officer Campbell testified as follows:

The State: Okay. And can you tell the Court, when you searched the vehicle, did you find anything of note in the vehicle?

Officer Campbell: Yes, I did.

Q: What did you find?

A: *Beginning the search, I opened up the driver door. In the driver panel of the door there was kind of a compartment that as soon as I opened the door, I immediately saw a bag of marijuana and a couple of magazines that belonged to the firearm and ammunition in that compartment.* I looked to the driver's seat to begin to search there. Soon as I did, I saw the butt of a gun. I looked under the seat and discovered a loaded firearm.

Q: Okay. And that was under the driver's seat?

A: That's correct.

Suppression Tr. 20.

{¶ 22} Furthermore, assuming the compartment Officer Campbell described was

closed, we conclude that he properly looked inside it as part of the inventory search. "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." *Hathman* at paragraph two of the syllabus.

{¶ 23} As previously stated, the Dayton Police Department Tow Policy, which was admitted into evidence, provides at Section IV(B)(1), in pertinent part, as follows: "B. *Inventory of a Towed Vehicle—Arrest Situation* * * * 1. Inventory property inside the vehicle's passenger compartment, glove box, console, and trunk prior to towing. * * * " (Italics added.) Thus, the tow policy specifically provides for inventorying property inside a compartment, and Officer Campbell therefore properly looked inside the compartment, even assuming it was closed, under *Hathman*. *See State v. Favors*, 2d Dist. Montgomery No. 24921, 2012-Ohio-3596, ¶ 21-22.

{¶ 24} As aforementioned, the Ohio Supreme Court has explained that an inventory search is reasonable when it is performed in good faith pursuant to standard police policy and "when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle." *Robinson*, 58 Ohio St.2d at 480, 391 N.E.2d 317. Here, Officer Campbell testified that he performed an inventory search of the subject vehicle in order "to mark valuables or anything like that, just any notable items in the car. Just to document that." Suppression Tr. 19. Upon review, we conclude that Officer Campbell conducted the inventory search of the vehicle in accordance with reasonable standardized procedure as set forth in the Dayton Police Department's tow policy. The policy also indicates the inventory search cannot be a

pretext for an investigative search. The policy conforms to law and nothing in the record suggests the inventory search was a pretext for an investigative search.

{¶ 25} Allen's first assignment of error is overruled.

{¶ 26} Allen's second assignment of error is as follows:

TRIAL COUNSEL WAS INEFFECTIVE FOR ALLOWING DEFENDANT TO PLEA (sic) TO CHARGES THAT COULD NOT HAVE BEEN PROVEN BY THE STATE.

{¶ 27} In his second assignment, Allen argues that his trial counsel was ineffective for allowing him to plead no contest to having a weapon while under disability in exchange for the dismissal of the count of improper handling of a firearm in a motor vehicle. Specifically, Allen contends that the State "did not allege or prove that Mr. Allen was 'knowingly in possession' " of a firearm while under disability pursuant to R.C. 2923.13(A).

{¶ 28} "We review the alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, * * *. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable

decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Citation omitted.) *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 29} An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland* at 688. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 30} R.C. 2923.13(A)(3) provides:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession,

use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶ 31} In the instant case, the crux of Allen's argument regarding his claim for ineffective assistance revolves around the tactical decision made by his counsel prior to trial when he advised Allen to plead no contest to the weapons under disability charge. Tactical decisions and trial strategy cannot form the basis of a claim for ineffective assistance. We note that had the weapon under disability charge gone to trial, the fact of Allen's prior conviction, which formed the basis of the disability charge, would have been admissible at trial. *See State v. Bray*, 2d Dist. Clark No. 2010 CA 14, 2011-Ohio-4660, ¶ 60. It is not unreasonable to conclude that Allen's counsel advised him to plead in order to keep the prior conviction from a jury. Furthermore, in exchange for pleading no contest to having a weapon while under disability, the State dismissed the count of improper handling of a firearm in a motor vehicle. Finally, we note that Crim.R. 11(C) sets forth the trial court's responsibilities in accepting a no-contest or guilty plea to a felony offense. The rule does not require the trial court to establish the factual basis for the offense before accepting a plea. *State v. Greathouse,* 158 Ohio App.3d 135, 2004-Ohio-3402, 814 N.E.2d 502, ¶ 7 (2d Dist.).

{¶ 32} Accordingly, Allen has failed to establish that he was prejudiced by his counsel's advice. "Reviewing courts must indulge in a strong presumption that counsel's conduct was not improper, and reject post-trial scrutiny of an act or omission that was a matter of trial tactics merely because it failed to avoid a conviction." *State v. Reid*, 2d Dist. Montgomery App. No. 23409, 2010-Ohio-1686, ¶ 24.

{¶ 33} Allen's second assignment of error is overruled.

{¶ 34} Both of Allen's assignments of error having been overruled, the judgment

of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Jamie J. Rizzo
Kristin L. Arnold
Hon. Mary Katherine Huffman