[Cite as *State v. Moore*, 2022-Ohio-283.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29143 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1870 |
| | : | |
| DONAVAN MOORE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of February, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 1717 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Donavan Moore appeals from his conviction after he pled no contest to possession of heroin and was sentenced to six years in prison. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.     Facts and Procedural History

{¶ 2} On June 6, 2019, Dayton Police Officer Randy Betsinger was on patrol in the area of 100 West Norman Avenue when he noticed a silver Chevy Trailblazer with dark windows and decided to make a traffic stop for a possible window tint violation. As Officer Betsinger pulled behind the vehicle, Moore (who was driving) parked the car at the curb, then he and another individual exited and began walking toward Officer Betsinger. Because he was the lone officer contacting the two individuals, and because he believed Moore was being uncooperative, Officer Betsinger placed Moore in handcuffs for officer safety purposes and ultimately put him in the back of the cruiser.

{¶ 3} Officer Betsinger took Moore's driver's license, ran it through the system, and determined that Moore's license had been suspended. Officer Betsinger also noted that Moore had been flagged for being involved with drugs and weapons. In addition to the information gleaned about Moore, Officer Betsinger discovered that the registered owner of the car was Tasia Owens, who was not at the scene.

{¶ 4} Based on the fact that Moore had a suspended license and could not legally drive the vehicle, Officer Betsinger made the decision to tow the Trailblazer pursuant to the Dayton Police Department tow policy. Once the tow truck arrived, officers completed an inventory search of the vehicle and discovered large amounts of narcotics and cash inside. Moore was then arrested and transported to the Montgomery County Jail.

{¶ 5} On July 31, 2019, Moore was indicted for possession of heroin (greater than or equal to 100 grams – major drug offender), a felony of the first degree; aggravated possession of drugs (50x bulk but less than 100x bulk), a felony of the first degree; and possession of a fentanyl-related compound (greater than or equal to 100 grams), a felony of the first degree. After an unsuccessful suppression motion which challenged the tow and search of the vehicle, Moore pled no contest to possession of heroin (without the major drug offender specification), a first-degree felony. The remaining counts were dismissed. The trial court sentenced Moore to a jointly-recommended term of six years.

{¶ 6} Moore appeals, raising two assignments of error.

II.     **Inventory Search**

{¶ 7} In his first assignment of error, Moore argues that the trial court erred by overruling his motion to suppress because Officer Betsinger failed to follow the Dayton Police Department's tow policy, making the inventory search of his car unconstitutional.

Standard of Review

{¶ 8} The weight of the evidence and the credibility of the witnesses at a suppression hearing are primarily for the trial court to determine. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 58. In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the lower court's factual findings and relies on its ability to assess the credibility of witnesses, but independently determines whether the trial court applied the proper legal standard to the facts as found. *State v. Hurt*, 2d Dist. Montgomery No. 21009, 2006-Ohio-990, ¶ 16. That legal determination requires an independent review, without deference to the trial court's conclusions. *State v. Bissaillon,* 2d Dist. Greene No. 2006-CA-130, 2007-Ohio-2349, ¶ 8.

Law and Analysis

{¶ 9} "It is well settled that the 'inventory exception' to the warrant requirement of the Fourth Amendment permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle." *State v. Pullen*, 2d Dist. Montgomery No. 24620, 2012-Ohio-1858, ¶ 13, citing *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The rationale for excluding these searches from the warrant requirement is that they are an administrative or caretaking function, rather than investigative in nature. *State v. Allen,* 2d Dist. Montgomery No. 28450, 2020-Ohio-947, ¶ 12. This type of search "reasonably serves to protect the owner's property while it is in police custody, to protect police against claims concerning lost or stolen property, and to protect police and the public against potential hazards posed by the impounded property." *State v. Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580, ¶ 12.

{¶ 10} An inventory search must be conducted in good faith and in accordance with reasonable standardized procedures or established routines. *Id.* at ¶ 13. The evidence presented must demonstrate that the police department has a standard policy, demonstrate what the policy is, and how the officer's actions conformed to that policy. *Allen* at ¶ 13, citing *State v. Wilcoxson*, 2d Dist. Montgomery No. 15928, 1997 WL 452011, *4 (July 25, 1997).

{¶ 11} For law enforcement to perform a valid inventory search, the vehicle must be lawfully impounded. "An impoundment is lawful if it is conducted pursuant to standardized police procedures." *State v. Clancy*, 2d Dist. Montgomery No. 18844, 2002-Ohio-1881, ¶ 5. Standardized procedures for impoundment are important to ensure that an inventory search is not pretext for a "fishing expedition" to discover incriminating

evidence. *Id.* These procedures can take the form of statutes (*see* R.C. 4509.101(B)(1)(a), authorizing impounding a vehicle when its driver is operating a vehicle without proof of financial responsibility), or police regulations or municipal ordinances authorizing impoundment. *Id.*

{¶ 12} In this case, Officer Betsinger testified that after discovering Moore's license was suspended and that he was not the registered owner of the vehicle, he decided, pursuant to Dayton Police policy, to tow the silver Trailblazer Moore was driving. The Dayton Police Department General Order regarding towing motor vehicles (that was in effect at the time of the incident) stated in pertinent part:

1. **WHEN TO TOW A VEHICLE**

A. <u>Driver/Owner Arrested</u>: Vehicles <u>operated</u> by drivers without an operator's license, while under suspension, operating while under the influence or where the vehicle was used in the commission of a crime should preferably be towed from where they were stopped, including private property. * * *

1. If the driver is the registered owner or the registered owner is on scene and gives permission to another properly licensed driver to drive their vehicle, the officer <u>may</u> release the vehicle rather than tow it.

(Underlining in the original.) State's Exhibit 2.

{¶ 13} The tow policy further stated:

**4. PROPERTY INVENTORY OF A TOWED MOTOR VEHICLE**

A. Prior to towing any motor vehicle (excluding Abandoned Vehicles),

conduct an inventory of the vehicle's contents and note the information on the MDC screen or complete a Tow-In/Liability Waiver Card F-472. A property inventory is an administrative, caretaking function, which itemizes and secures property in a seized or impounded vehicle. The United States Supreme Court has ruled that an inventory of lawfully seized motor vehicle conducted to safeguard property and not merely as a pretext to search without a warrant is reasonable and does not violate the Fourth Amendment Rights against illegal searches.

{¶ 14} Based on the plain language of the tow policy in place at the time of the incident (the policy has since been changed in significant ways), Officer Betsinger was permitted to tow the silver Trailblazer because it was being driven by Moore, who undisputedly had a suspended license, and because the registered owner, Tasia Owens, was not on scene to have the vehicle released to her. This also means that pursuant to the tow policy in place on June 6, 2019, Officer Betsinger was required to conduct an inventory of its contents prior to the tow.

{¶ 15} Moore argues in his brief that Officer Betsinger was required to first contact the vehicle's owner before initiating the tow and inventory search, but that argument is mistaken and seems to be based on the most recent tow policy promulgated by the Dayton Police Department, which states: "If the registered owner is not on scene, a reasonable effort should be made to contact him/her in order to retrieve the vehicle." Dayton Police Department General Order: Towing Motor Vehicles – Revised March 2020. The tow policy in effect on June 6, 2019, however, specifically stated that "[i]f the driver is the registered owner, or the registered owner is on the scene and gives permission to

another properly licensed driver to drive their vehicle, the officer may release the vehicle rather than tow it." Owens, the registered owner of the vehicle, was not present, and Officer Betsinger had no obligation to contact her to retrieve the vehicle. *See Allen*, 2d Dist. Montgomery No. 28450, 2020-Ohio-947, ¶ 19.

{¶ 16} We conclude, as the trial court did, that the inventory search which led to the discovery of the illicit drugs and cash was lawful. The first assignment of error is overruled.

### III.    Pretext

{¶ 17} In his second assignment of error, Moore claims that Officer Betsinger searched his car under the guise of an inventory search, but it was really a "pretext for an investigatory search that the officer wished to conduct after reading the field notes while running [his] license." Appellant's Brief at 14. Moore seems to base this accusation on his imperfect reading of the Dayton Police Department tow policy in place at the time of the incident. This argument, however, is unpersuasive.

{¶ 18} The operational tow policy on June 6, 2019 did not require the registered owner of the vehicle to be contacted before towing. In fact, the policy did not seem to even give officers the discretion to do so. *See Allen* at ¶ 19. Further, Officer Betsinger stated during the suppression hearing that while he knew of Moore's purported history with drugs and firearms, the decision to tow the vehicle was made as soon as he became aware that Moore was driving with a suspended license. He also testified that Moore was only being investigated for the potential window tint violation and license suspension. Transcript at p. 27, 35.

{¶ 19} Moore also argues that Officer Betsinger admitted to looking into the car

and seeing money, so, he reasons, that prompted him to be placed in handcuffs and the tow/inventory search initiated. The evidence in the record, however, does not support Moore's theory.

{¶ 20} At the suppression hearing, the State offered into evidence the cruiser camera video of the incident. In it, at approximately the 19:30 mark, Officer Betsinger can be seen looking into the vehicle and then remarking, "there's a stack of money." That observation was made more than three minutes after Officer Betsinger was heard (at approximately the 16:00 mark) discussing towing the vehicle with Moore. Further, Officer Betsinger testified that Moore was placed in handcuffs, not as a reaction to seeing the money in the car, but because Moore was uncooperative and because he was initially the only officer on the scene. Transcript at p. 22, 37.

{¶ 21} Perhaps the most persuasive evidence that the inventory search was not pretextual was that Officer Betsinger did not need to use that exception to check if drugs were present in the vehicle. Officer Betsinger was a canine officer, and he had the ability to have his canine partner do a "free-air sniff" of the Trailblazer. *See State v. Boyce*, 2d Dist. Clark No. 2018-CA-77, 2020-Ohio-3573, ¶ 73 (officer does not need reasonable suspicion to conduct a dog sniff of a vehicle); *State v. Pryor*, 2d Dist. Montgomery No. 20800, 2005-Ohio-2770, ¶ 13 (it is well-established that the use of a narcotics dog does not constitute a "search" within the meaning of the Fourth Amendment); *State v. Raslovksy*, 2d Dist. Clark No. 2019-CA-55, 2020-Ohio-515, ¶ 14. If Officer Betsinger was just looking to search the vehicle for drugs or guns, a much easier, less work-intensive way was sitting in the back of his cruiser.

{¶ 22} There was no evidence that Officer Betsinger conducted the inventory

search as a pretext to find evidence of illicit activity. The search was done in accordance with Dayton Police Department's established tow policy which stated that officers had no obligation to contact the registered owner of the vehicle. Further, Moore's allegations that Officer Betsinger was in some way a bad actor, who saw the cash in the backseat and then decided to handcuff him and then summoned up a way to search the vehicle, were belied by the evidence. If Officer Betsinger was only on a fishing expedition, he had easier ways to go about it. The second assignment of error is overruled.

### IV.  Conclusion

{¶ 23} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Kristin L. Arnold
Hon. Timothy N. O'Connell, Administrative Judge